FILED
HARRISBURG, PA

MAR 3 0 2020

Per ________
Deputy Clerk

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

MAURICE MICHAEL HENDERSON,
Defendant.

Criminal No.
12-cr-255
[Hon. John E. Jones III]

MOTION FOR IMPOSITION OF A REDUCTION OF SENTENCE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) AND USSG § 1B1.13 "OTHER REASONS"

MAURICE MICHAEL HENDERSON, Defendant, (or "Henderson"), proceeding pro se, moves this Court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and USSG § 1B1.13 "OTHER REASONS" for consideration of a reduction in sentence based on the extraordinary and compelling reasons outlined herein between 120 to 180 months, an evidentiary hearing, or alternatively an order to show cause.

> "An extra year, day, or moment of freedom from prison when warranted, is worth pursuing by a prisoner, and if justified by the law, should be granted by the Court." U.S. v. Simmons, 375 F. Supp 3d 379 (EDNY, 2019), Weinstein, J.

I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Henderson was indicted in 2012 along with four co-defendants on charges of conspiracy to manufacture, distribute and possession with intent to manufacture or distribute five kilograms or more of hydrochloride and 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A) - Count 1s; manufacture, distribute and possession with intent to manufacture and distribute five kilograms and more of cocaine hydrochloride and 280 grams and more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 18 U.S.C. § 2 - Count 2s, possession of a firearm in furtherance of a drug trafficking crime, a violation of 18 U.S.C. § 924(c)(1)(A) - Count 3s.

After a four day jury trial, Henderson was found guilty of Counts 1s, and 2s, and not guilty on Count 3s. On August 27, 2014 the Court sentenced Henderson to 300 months imprisonment as to each count running concurrently,

$200 special assessment, followed by 10 years of supervised release. Henderson is currently serving that at LSCI Allenwood in White Deer, PA.

Henderson filed a direct appeal with the U.S. Court of Appeals for the Third Circuit. On appeal. Henderson argued (1) the district court improperly struck a potential juror for cause; (2) the district court erred by allowing the use of summary witness. U.S. v. Henderson, 613 Fed. Appx. 113 (3d Cir. 2015). the Court of Appeals affirmed the judgment.

Henderson filed a motion to vacate pursuant to 28 U.S.C. § 2255 raising the following grounds: (1) ineffective assistance of counsel by failing to adequately challenge testimony about conversion ratio of cooking cocaine power into crack; (2) failing to object to Detective Neff testifying as both a fact and expert witness; (3) failure to challenge the use of prior NYS conviction as a predicate offense for his status as a career offender; (4) omitted certain greounds on direct appeal that were meritorious. U.S. v. Henderson, 2018 U.S. dist. LEXIS 123269 (M.D. Pa. 2018).

Henderson now seeks fair consideration for the imposition of a reduced sentence based on extraordinary and compelling reasons of: (1) the First Step Act changes to the law regarding enhanced sentences for prior convictions under 21 U.S.C. § 851, broadened safey value provision; (2) the Sentencing Commission's concession that it was inappropriate to use the guideline commentary to expand the list of qualifying predicate crimes in designating career offenders for enhanced sentences instead of using the guidelines actual text; (3) the Supreme Court's clarification of 841(b) requirement that drug quantities that impose a mandatory minimum be proven beyond a reasonable doubt and a defendant may only be held accountable for his conduct or that which were reasonably forseeable to him.

The 300 month sentence imposed is an unjust sentence and the law has now shown that. Defendant requests a sentence between 120 - 180 months, followed by the five years of supervised release enacted as part of the First Step Act.

ARGUMENT

The First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to permit prisoners to move a sentencing court for modification of sentence "after the defendant has fully exhausted all administrative right to appeal a failure of the Bureau of Prisons to bring amotion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the Warden of the defendant's facility, whichever is earlier.

Section 3582(c)(1)(A) provides in pertinent part: [T]he court...may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a), to the extent that they are applicable, if it finds (i) extraordinary and compelling reasons warrant such a reduction; and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

U.S.S.G. § 1B1.13 and related Commentary from the Sentencing Commission were most recently updated on november 1, 2018, before the effective date of the First Step Act, December 21, 2018. Accordingly, the Guideline and Commentary still presume that a reduction in sentence under § 3582(c)(1)(A) must be made upon motion of the Director of the Bureau of Prisons. The Commentary describes certain circumstances under which "extraordinary and compelling reasons" for a reduction in sentence are deemed to exist, but the Commetnary does not suggest the list is exclusive. Application Note 1(D), titled "Other reasons" is a catchall provision, noting that the Director may determine "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." Application Note 3 states that "rehabilitation of the defendant is not by itself, an extraordinary and compelling reason for purposes of this policy statement," mirroring the language of 28 U.S.C. § 994(t). In Application Note 4, the Commission encourages the Director to file a motion for reduction of sentence if a defendant meets any of the circumstances set forth in Application Note 1, thereby allowing a court to consider § 3553(a) factors, as well as criteria in the Commission's policy

statement such as whether a defendant is a danger to the safety of any other person or to the community, when determining whether to reduce a term of imprisonment..

Numerous courts have concluded that the Commission's failure to amend Guideline § 1B1.13 and related Commentary following the First step Act does not preclude a court from acting on motions for sentence reductions or using the catch-all provision in Application Note 1 (D). See United States v. Brown, 2019 WL 4942051, No. 4:05-CR-00227-1 (S.D. Iowa, Oct. 8, 2019) (citing United States v. Beck, No. 1:13-cr-186-6, 2019 WL 2716505, at 5 (M.D.N.C. June 28, 2019); United States v. Cantu, No. 1:05-CR-456-1, 2019 WL 2498923, at 5 (S.D. Tex. June 17, 2019); United States v. Fox, No. 2:14-cr-03 DBH, 2019 WL 3046086, at 3 (D. Me. July 11, 2014); see also United States v. Urkevich, No. 8:03-cr-37 (D. Neb. Nov. 14, 2019)(Reducing the defendant's term of incarceration under 18 U.S.C. § 3582(c)(1)(A)(i). The Court, after consideration of all the factors set forth in 18 U.S.C. §3553(a), especially 3553(a)(2)(A) found "extraordinary and compelling reasons" for a reduction in the defendant's sentence. The Court reduced the defendants 300-month sentence on the second firearm Count to 60 month, noting that the second firearm Count today would only carry a 60 month sentence).

In an analogus opinion from United States v. Maumau, No. 2:08-cr-000758-TC-11 (D. Utah Feb. 18, 2020), Judge Tena Campbell provided an extended, and thoughtful review of recent compassionate release jurisprudence and the changes made by the First Step Act to § 3582(c)(1)(A). Maumau was sentenced to 57 years in prison for racketeering conspiracy, Hobbs Act robbery and assault with a dangerous weapon, which was later reduced to 55 years on direct appeal. Maumau filed a motion for a reduction of his sentence under 3582(c)(1)(A).

In granting Maumau's motion, Judge Campbell's opinion joined the majority of other district courts to have addressed this issue in concluding it has the discretion to provide a defendant with relief, even if the situation does not fall within the Sentencing Commission's current policy statement.

As part of the First Step Act, it is for the Court, not the Director of the Bureau of Prisons, to determine whether there is an "extraordinary and compelling reason" to reduce a sentence ... the Court concluded.

## DISCUSSION

### A. EXHAUSTION

Henderson made a request to the Office of the Warden of his institution for a reduction in sentence. The Warden responded on January 30, 2020 denying the request but encouraging a petition directly to the sentencing Court. (Exhibit 'A').

Following the Warden's guidance, Henderson filed an apepal to the Office of General Counsel for the Federal Bureau of Prisons on February 2, 2020 through the prison mail system. (Exhibit 'B'). More than 30 days has elapsed and no response has been received. Id.

Henderson has exhausted his administrative remedy.

### B. EXTRAORDINARY AND COMPELLING REASONS FOR REDUCTION

#### 1. CAREER OFFENDER

When Henderson was sentenced he was designated a career offender under the U.S. Sentencing Guidelines, § 4B1.1 However superseding authority and clarification from the U.S. Sentencing Commision now demonstrates Henderson was not a career offender because he did not have hte required predicate and instant offense to qualify as a career offender.

Under the Sentencing Guidelines, in order to be a career offender, the defendant must be (1) at least 18 years old at the time the defendant committed the instant offense, (2) the instant offense is a felony that is either a crime of violence or a controlled substance offense, (3) and the defendant has at least two prior felony convictions of either a crime of violence or controlled substance offenses. § 4B1.1(a).

The Guidelines define a controlled substance as an offense that ... (2) prohibits the manufacture, import, export, distribution or dispensing of a controlled substance (or counterfeit substance) with intent to manufacture, import, export, distribute or dispense)." Id. § 4B1.2(b).

The above detailed definition does not include "conspiracies, aiding or abetting, simple possesion, or attempt offenses as predicates.

The only way to use a defendant's prior conviction to designate him a career offender would have required the use of the Guidelines commentary as the detailed definition of "controlled substance offense" in § 4B1.2(b) does not include inchoate offenses. However, Application Note 1 of § 4B1.2(b) commentary states a "controlled substance offense" includes attempt, conspiracy, aiding and abetting, or other inchoate offenses. The Supreme Court has held "commentary in the Guidelines Manual that interprets or explains a guideline is authorative unless it ... is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 508 U.S. 36, 38, 113 S. Ct. 1713 (1993). The Courts were split on whether the commentary's inclusion of inchoate offenses is authorizative or an erroneous expansion of § 4B1.2's plain language.

The First, Third, Seventh, and Eleventh Circuits have held the commentary is consistent with § 4B1.2(b)'s text. U.S. v. Adams, 934 F.3d 720, 727-30 (7th Cir. 2019); U.S. v. Smith, 54 F.3d 693 (11th Cir. 1995); U.S. Piper, 35 F.3d 611, 617 (1st Cir. 1994); U.S. v. Hightower, 25 F. 3d 182, 187 (3d Cir. 1994). The D.C. Circuit created a split when it ruled in 2018 that the commentary conflicts with § 4B1.2(b), and the Sixth Circuit followed in 2019. U.S. v. Havis, 927 F.3d 382, 385-387 (6th Cir. 2019) (en banc); U.S. v. Winstead, 890 F.3d 1082, 1090-92, (D. C. Cir. 2018). The Ninth Circuit desired to follow the D.C. and Sixth Circuits, but precedent required it to apply the commentary. U.S. v. Crum, 934 F.3d 963, 966-67 (9th Cir. 2019). While the issue remains open in the Fourth Circuit, at least two courts in the Southern District of West Virginia have followed the D.C. Circuit and Sixth Circuits. In U.S. v.Gibbs, the Court ruled at sentencing that attempted delivery of a controlled substance is not a "controlled substance offense" under § 2k2.1 which incorporates the definition in § 4B1.2. No. 2:18-cr-89-1 (July 21, 2019). And in U.S. v. Cooper, the Court ruled that conspiracy to commit a robbery is not a "crime of violence" under § 4B1.2. No. 2:19-cr-81, 2019 U.S. Dist. LEXIS 174261 (Oct. 8, 2019), ECF No. 35. The commentary's inclusion of conspiracy, adds an entirely new offense to "crime[s] of violence." 2019 U.S. Dist. LEXIS 174261, at *4.

Application Note 1's inclusion of inchoate crimes is inconsistent with the text of § 4B1.2(b). The subsection names in detail the crimes that qualify as a "controlled susbtance offense." and none are inchoate offenses. See Burgess v. U.S., 553 U.S. 124, 130, 128 S. ct. 1572 (2008)("As a rule, [a] definition which declares what a term 'means' .... excludes any meaning that is not stated. As the D.C. Circuit and Sixth have noted, § 4B1.2 itself demonstrates that the Commission knows how to include inchoate offenses when it wants because § 4B1.2(a)(1) explicitly defines a "crime of violence" as an offense that "has as an element the use, attempted use, or threatened use of physical force ..." Havis, 927 F.3d at 386; Winstead, 890 F.3d at 1091. In contrast nothing in § 4B1.2(b) can bear the construction that "controlled substance offense" includes inchoate crimes. Stinson, 508 U.S. at 46 (holding commentary hinds courts only if the guidelines which the commentary interprets will bear the construction."

The D.C. Circuit remaked in Winstead, that "[i]f the Commission wishes to expand the definition of 'controlled substance offense' to include attempts, it may seek to amend the language of the guidelines by submitting the changes for congressional review.' 890 F.3d at 1092 (citing Stinson, 508 U.S. at 44). The Commission has since proposed an amendment to § 4B1.2 that would move the inchoate offense language from Application Note 1 to the guideline text. See 83 Fed. Reg. 65400, 65412-15 (Dec. 20, 2018). The proposed amendment, should in any court's view, concede the inadequate textual basis in § 4B1.2(b) for Application Note 1's inclusion of inchoate offenses. Until Congress amends it, the plain text of §4b1.2(b) compels the Court to exclude inchoate crimes as predicate offenses for the career offender designation.

Applying this logic to Henderson's case, neither his instant offense of conspiracy with intent to distribute cannot be used as a predicate and the Court cannot separate the two charges/ counts because there was no intervening arrests and constitute a single offense grouped together where a conspiracy carried the greater sentence. Moreover, Henderson's prior NYS conviction of attempted sale of a controlled substance (PSR ¶ 48) cannot be utilized as a predicate to designate him a career offender.

Thus, Henderson is not a career offender. The concession via the proposed Amendment by the Sentencing Commission constitutes extraordinary and compelling

reasons to grant this request and reduce this unjust sentence.

2. FIRST STEP ACT CHANGES

A. SERIOUS DRUG FELONY

During Henderon's proceeding the Government served him a 21 U.S.C. § 851 Notice of enhancement which would subject him to a mandatory minimum of 20 years as a result of his prior felony drug offense (21 U.S.C. § 802(44)). The Notice required the Court to impose at least a minimum of 240 months or 20 years if convicted.

As part of the sweeping changes in the First Step Act, to enhance a defendant's sentence such as that of Henderson requires a "serious drug felony." A serious drug felony means an offense prohibited by 18 U.S.C. § 924(e)(2)(A) for which the defendant--

(i) the defendant served a term of imprisonment of more than 12 months; and

(ii) was released from any term of imprisonment within 15 years of the instant offense.

Section 924(e)(2)(B) defines "serious drug felony" as an offense under the Controlled Substance Act (21 U.S.C. § 801, et seq.), the Controlled Substance Import and Export Act (21 U.S.C.§ 951 et seq.)m Chapter 705 of Title 46 (Maritime Law Enforcement) or under state law, involving manufacturing, distributing, or possessing, with intent to distribute a controlled substance (as defined in section 102 of the Controlled Substance Act, 21 U.S.C. § 802) for which the maximum term of imprisonment is ten years or more.

The First Step Act lowered the minimum penalty for a prior qualifying "serious drug felony" from 20 years to 15 and for a second prior, reduced life imprisonment to 25 years.

Henderson posits that the First Step Act changes to the law, reducing the mandatory minimum based on prior "serious drug felony" and limitation of qualifying offenses for enhancement constitutes compelling and extraordinary circumstances as to warrant consideratin of a reduction in sentence.

3. CHANGE IN STATUTORY INTERPRETATION CONSTITUTES EXTRAORDINARY AND COMPELLING REASONS TO IMPOSE A REDUCE SENTENCE.

During Henderon's trial, the Third Circuit had as precedent that, under Apprendi v. New Jersey, 530 U.S. 466 (2000), a jury in a multi-defendant drug conspiracy case need only determine the amount of drugs involved in the conspiracy as a whole, not the amount attributable to each defendant. The Circuit had yet to incorporate Alleyne in it's circuit law. The Third Circuit premised it's holding on persuasive analysis of cases from other circuits, the court reasoned:

> 'In drug conspiracy cases, Apprendi requires the jury find only the drug type and quantity element as to the conspiracy as a whole, and not the drug type and quantity attributable to each co-conspirator. The finding of drug quantity, for purposes of determining the statutory maximum. In other words, to be an offense specific, not a defendant specific determination. They jury must find, beyond a reasonable doubt, the existence of a conspiracy, the defendant's involvement in it, and the requiste drug type and quantity involved in the conspiracy as a whole. Once the jury makes these findings, it is for the sentencing judge to determine by a preponderance of the evidence the drug quantity attributable to each defendant and sentence him or her accordingly, provided that the sentence does not exceed the applicable statutory maximum.'

The Third Circuit in United States v. Phillips, affirmed the trial court's instructions to the jury to decide, beyond a reasonable doubt, only the amount of crack involved in the conspiracy itself and upheld sentences for the individual defendants that were within the statutory maximum of life imprisonment triggered by the jury's finding that the amount of crack attributable to the conspiracy was 50 or more grams. 349 F.3d at 140 (349 F.3d 138 (3d Cir. 2003).

After Alleyne v. United States, 570 U.S. 99, 103, 133 S. Ct. 2151 (2013) the jury must find the mandatory minimum and statutory maximum triggering element by proof beyond a reasonable doubt. In drug cases, because § 841 provides an increased penalty based on the drug quantity a defendant conspired to distribute, quantity "is an element [of the crime] that needs to be submitted to the jury and found beyond a reasonable doubt. In conspiracy cases, the conspiracy wide quantity govern the statutory maximum, but the individualized quantity, forseeable govern the mandatory minimum. The Third Circuit never addressed it's conspiracy wide approach, since the Supreme Court's ruling in Alleyne.

In a recent Third Circuit decision, the Court reversed a conviction where the defendant was charged with distributing and possessing with intent to distribute one kilogram and more of heroin, in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(A). The Court held that the Government was required to prove that the defendant distributed or possessed one kilogram of heroin on a single occasion. The Court concluded that without such evidence no defendant could be convicted of an offense under Section 841(b)(1)(A). Rowe, 2019 U.S. App. LEXIS 9621 (3d Cir. 2019).

While Rowe did not specifically address conspiracies, Section 846 states that a defendant guilty of attempt or conspiracy of a drug offense "shall be subject to the same penalties as prescribed for that offense," creating a clear relationship between 846 and 21 U.S.C. § 841(b)(1) because the conduct at issue related to an agreement of 5 kilograms or more of cocaine and 280 grams or more of cocaine base aka crack.

This decision represents a substantive intervening change of law in this Circuit. The decision illustrates what the Government is required to prove in order to subject a defendant to a mandatory minimum term of 5 or 10 years imprisonment even in a conspiracy case. Where the evidence does not demonstrate that there was an agreement to distribute or possess with intent to distribute 1 kilogram of heroin, 5 kilogram of cocaine power, 280 grams of cocaine base, or 1,000 kilograms of marijuana on a single occasion, no conviction or sentence may be imposed under Section 841(b)(1)(A), (ten year min).The same is true as it relates to Section 841(b)(1)(B), the section triggering the five year mandatory minimum, where the evidence does not demonstrate that the defendant agreed to distribute (on a single occasion) 100 grams of heroin, 500 grams of cocaine, 28 grams of cocaine base, or 100 kilograms of marijuana, no conviction or sentence may be imposed under Section 841(b)(1)(B) (five year minimum).

In this case, the indictment alleged a conspiracy to distribute or possess with intent to distribute 5 kilograms or more of cocaine hydrochloride and 280 grams or more cocaine base. The Government in this case made the allegation between January 2010 and continuing through on or about September 11, 2012, that the defendant and his co-conspirators distributed drugs on many occasions and the aggregate quantity from the eight to 10 trips reach the specified quantity alleged. The Government did not establish that the agreement was to distribute or possess that specific quantity in a single occasion. Based on Rowe, this

practice is unauthorized..

In conspiracy cases, the Government is required to prove that the intended future conduct the defendants are alleged to have agreed upon include every single element of the substantive offense. In the case where the Government has charged a defendant with conspiracy to distribute 280 grams of cocaine base, it must prove that there was an understanding that 280 grams of cocaine base would be distributed on a single occasion. A review of the facts of the case will show that Henderson entered into no such agreement.

Approximately a month after Rowe was decided, the Second Circuit issued an identical opinion in United States v. Pauling, 924 F.3d 649 (2d Cir. 2019).

In Pauling, the Second Circuit affirmed the District Court's order granting the defendant's motion to set aside his conviction for conspiracy to distribute or possess with intent to distribute 100 grams or more of heroin. The Court found that the district court had correctly found that the evidence at trial did not establish the quantity element of the offense (100 grams or more).

The Pauling defendant was convicted of being a member of a drug conspiracy with an individual named "Low.". It was uncontested at trial that defendant Pauling and Low conspired to distribute 89 grams of heroin based on four transactions documented by the government. However, defendant Pauling argued that the government had not proved that the conspiracy included at least 11 more grams beyond a reasonable doubt, a quantity that would trigger the mandatory minimum sentence.

The government in turn relied on two different theories to demonstrate the necessary, additional grams. First, the government argued that it had established these additional grams based on a July 3 phone call in which a customer ordered 14 grams from Pauling. These 14 grams were already included in the 89, but the government asserted that another 14 grams could be "inferred" from this particular phone call because the customer stated that he wanted the "same thing as last time." Second the government argued that the jury could "infer" the additional 11 grams of heroin from the course of dealings between defendant Pauling and Low, which indicated that they might have engaged in other similar transactions.

substantiate Henderson being involved in the conspiracy for the entire time period alleged in the indictment to establish that he should be held accountable for 5 kilograms of cocaine and 280 grams of crack.

These facts do not show that the Government met it's burden of proving the existence of one over-arching conspiracy involving Henderson, or (2) that the object with his involvement was to distribute 5 kilogram of cocaine and 280 grams of cocaine base.

In Henderson's case the Court failed to properly instruct the jury as to the elements of the offense and finding the drug quantity, such as (1) that was reasonably forseeable to that defendant, and (2) that was distributed by members of the conspiracy during the time that the defendant was a member of the conspiracy.

The Government evidence supporting the 5 kilograms cocaine and 280 grams of crack was premised on it's incorrect belief that it could combine weights from multiple distributions and discontinuous possessions during the indictment period. However, at trial no evidence was presented that Henderson entered into the conspiracy and agreed to the 5 kilogram possession or 280 grams possession on a single occasion. Moreover, as argued the conspiracy was charged as a single conspiracy, however, there were multiple conspiracies which did not involve Henderson, nor any agreement such as the Siar-Green conspiracy, or the 8-9 other trips taken by others.

No matter how favorable the Court looks at the evidence in favor of the government, Henderson's conviction was obtained in violation of the Sixth Amendment and cannot stand, as the Government failed to meet it's burden of proving the quantity element of the offense. No reasonable juror would convict Henderson of an offense that requires entering into an agreement to distribute and possess 5 kilogram of cocaine and 280 grams of crack. Henderson is actually innocent of the offense.

This claim could not have been raised due to circuit law at the time of Hendersons trial and the Court failing to address Alleyne when handed down as part of the jury instructions.

Henderson argues that the District Court in Nebraska granted a sentence reduction in Urkevich premised on Congress's clarification of 924(c). Like Urkevich, Henderson contends the clarification or change by Congress that Defendant's with a prior serious drug conviction be subject to a minimum sentence of 15 years and eliminating life, constitutes extraordinary and compelling reasons. Indeed this formed the basis for the Maumau court to grant relief.

Moreover, even the Sentencing Commission's concession of improperly expanding the list of qualifying offenses for career offender via a guideline commentary constitutes extraordinary and compelling reasons to reduce Hendersons' sentence.

The clarification of the rules of statutory interpretation of 21 U.S.C. § 841(b)(1) and it's incorporation of 846 and the government must prove the drug quantity beyond a reasonable doubt even when it involves a conspiracy constitutes extraorindary and compelling reasons (5th and 6th Amendment violation) to warrant a reduction in sentence.

Henderson requests the Court to impose a sentence between 120 to 180 months, along with 5 years of supervised release based on the change int he law. Should the Court require more information on the defendant, the COurt can have him interviewed through the probation office and preparation of a new PSR to address his character, his danger to the public, his likelihood of rehabilitation or recividism.

If sentenced today, Henderson would not be subject to the 300 month sentence that the Court originally imposed.

WHEREFORE, Maurice Michael Henderson respectfully prays this Honorable Court grant his motion and reduce his sentence to 120 - 180 month, if any additional concerns arise, have him interviewed through the Probation Department and order the preparation of a new PSR, or alternatively issue an order to show cause.

Dated: March 26, 2020.

Respectfully submitted,

Maurice Michael Henderson
#11974-067
LSCI Allenwood
P O Box 1000
White Deer, PA 17887

SUPPLEMENTAL AUTHORITY

In the following cases, district courts have granted motions for reduction in sentence under 3582(c)(1)(A), finding extraordinary and compelling circumstances not necessary involving health or age related basis.

United States v. O'Bryan, No. 96-10076-03-JTM, 2020 WL 869475 (D. Kan. Feb 21, 2020);

United States v. Mondaca, No. 89-CR-0655-DMS, 2020 WL 1029024 (S. D. Cal. March 3, 2020);

United States v. Young, No. 2:00-cr-00002-1, 2020 WL 1047815 (MD Tenn. March 4, 2020);

United States v. Davis, No. PJM 00-424-2, 2020 WL 1083158 (D. Md. March 5, 2020);

United States v. Perez, No. 88-10094-1-JTM, 2020 WL 1180719 (D. Kansas March 11, 2020);

United States v. Redd, No. 1:97-cr-00006-AJT, 2020 WL 1248493 (E.D. Va. Mar. 16, 2020).

Maurice Henderson #11974-067
F.C.C. Allenwood Low
P.O. Box 1000
White Deer, PA 17887



RECEIVED
HARRISBURG, PA
MAR 30 2020
PER ______
DEPUTY CLERK

⇔11974-067⇔
Clerk Of Courts
228 Walnut
Harrisburg, PA 17108
United States

Clerk of Court
228 Walnut
Harrisburg, PA 17108

Low Security Correction[illegible]
Allenwood, PA
Date MAR 2 7 2020

The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has neither been opened nor inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another addressee, please return the enclosure to the above [illegible]

Legal Mail